```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :  No.  3:11CR-76(SRU)
                                 :  915 Lafayette Boulevard
                                 :  Bridgeport, Connecticut
          vs.    :
                                 :  May 4, 2011
JUAN CARLOS GUILLEN ZERPA        :
                                 :
- - - - - - - - - - - - - - - - x
```

                     WAIVER AND PLEA

B E F O R E:

     THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S:


     FOR THE GOVERNMENT:

          OFFICE OF THE UNITED STATES ATTORNEY
               915 Lafayette Boulevard,  Room 309
               Bridgeport,  Connecticut 06604
          BY:  RICHARD J. SCHECHTER, AUSA
               PAUL A. MURPHY, AUSA

     FOR THE DEFENDANT:

          JAMES K. FILAN, ESQ.
               315 Post Road West
               Westport, Connecticut  06880

          DIAZ, REUS & TARG. LLP
               100 SE 2nd Street
               2600 Bank of America Tower
               Miami, Florida  33131
          BY:  ROBERT I. TARG, ESQ.


               Susan E. Catucci, RMR
               Official Court Reporter
               915 Lafayette Boulevard
            Bridgeport, Connecticut  06604
                 Tel: (917)703-0761

1                    (12:20 O'CLOCK, P. M.)

2              THE COURT:  Good afternoon.  We're here in the

3    matter of United States v. Juan Carlos Guillen Zerpa.

4    Could I have appearances, please.

5              MR. SCHECHTER:  Yes.  Good afternoon.  On behalf

6    of the United States, Senior Litigation Counsel Richard

7    Schechter.  With me at counsel table, Your Honor, is

8    United States Attorney Paul Murphy, as well as two Special

9    Agents of the FBI, Jason Breen and Shawn Kahanec.

10             THE COURT:  Very good.  Thank you.

11             MR. FILAN:  Good afternoon, Your Honor.  James

12   Filan on behalf of Mr. Guillen.

13             MR. TARG:  Good afternoon, Your Honor.  Robert

14   Targ on behalf of Mr. Guillen.  Mr. Guillen is with us at

15   counsel table today.

16             THE COURT:  Very good.  And Mark Myers of the U.

17   S. probation office is also with us in court today.

18             MR. MYERS:  That is correct, Your Honor.

19             MR. TARG:  That is correct.

20             THE COURT:  And we have with us also today

21   Virginia Saltzman, our Interpreter.  And, Ms. Saltzman,

22   your qualifications are well known to the court.  Have you

23   had a chance to speak with Mr. Guillen?

24             THE INTERPRETER:  Yes, I have.

25             THE COURT:  And have you and he had any

1    difficulty communicating?

2               THE INTERPRETER:  No, Your Honor.

3               THE COURT:  Do you know of any other reason you

4    could not fairly, justly and accurately interpret today's

5    proceeding?

6               THE INTERPRETER:  No, Your Honor.

7               THE COURT:  All right.  I ask that you be sworn,

8    please.

9               THE CLERK:  Please raise your right hand.

10              (Whereupon the Interpreter was duly sworn by the

11   Clerk.)

12              THE CLERK:  Please state your name for the

13   record.

14              THE INTERPRETER:  Virginia Saltzman.

15              THE CLERK:  Thank you.

16              THE COURT:  And, Ms. Saltzman, as always, if

17   there comes a time you have difficulty keeping up or

18   Mr. Guillen has any difficulty understanding what's going

19   on, please let me know and we'll address that.

20              THE INTERPRETER:  I'll do so.  Thank you.

21              THE COURT:  Thank you.  All right.  And my

22   understanding is we're here for a waiver of indictment and

23   entry of a guilty plea, is that right?

24              MR. TARG:  That is correct, Your Honor.

25              THE COURT:  All right.  Mr. Guillen, the first

1    thing I want to do is tell you I'm in no hurry today.  If

2    you decide to waive indictment and plead guilty to the

3    information, you're going to be giving up some important

4    constitutional rights and accepting certain other

5    significant consequences.  I want to make sure you

6    understand each of those rights before you waive them and

7    each of those consequences before you accept them.  So, if

8    at any time I or anyone else says anything that either

9    causes you concern or is confusing to you in any way,

10   please let me know and we'll try to address that.  All

11   right?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  Very good.  Let me begin with

14   advising you of certain rights that you have both today

15   and at all times.  And the first is the right to remain

16   silent.  That means that you don't have to say anything at

17   all in court today.  You don't have to answer my

18   questions.  You don't have to make any kind of statement.

19   If you start speaking, you can stop whenever you would

20   like to.  And you can speak with your lawyers before

21   saying anything in court.  Do you understand?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  All right.  Whatever you do say will

24   be taken down for the record by my court reporter and

25   could be used against you in this or some other

1    proceeding.  Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  You have the right to

4    counsel not only today but at every significant stage of

5    your case.  Do you understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  And you have the right to have

8    counsel appointed for you at no cost if you cannot afford

9    a lawyer.  Do you understand that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And your private communications with

12   your lawyers will be protected by what's called the

13   attorney-client privilege, so you can feel very

14   comfortable speaking privately with them and telling them

15   whatever they need to best represent you.  Do you

16   understand that?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  All right.  Now, before we can

19   proceed further with a waiver of indictment and entry of a

20   guilty plea, I have to ask you certain questions and

21   receive answers under oath, and that means waiving your

22   right to remain silent to that extent.  Are you prepared

23   to do that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  All right.  I would ask that you

```
 1    please stand and raise your right hand to be sworn to tell

 2    the truth.

 3              (Whereupon the Defendant was duly sworn by the

 4    Clerk.)

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  Mr. Guillen, now that you have been

 7    sworn to tell the truth, should you make a false statement

 8    under oath, you could be prosecuted either for making a

 9    false statement or for perjury.  Do you understand that?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  All right.  What is your full name,

12    please?

13              THE DEFENDANT:  Juan Carlos Guillen Zerpa.

14              THE COURT:  Have you ever used any other names?

15              THE INTERPRETER:  No, Your Honor.

16              THE COURT:  What is your date of birth?

17              THE DEFENDANT:  March 23, 1977.

18              THE COURT:  And how far did you go in school?

19              THE DEFENDANT:  University.  I -- Spanish,

20    that's right.

21              THE INTERPRETER:  I got a CPA degree from the

22    University of Venezuela.

23              THE COURT:  All right.  Are you a U. S. citizen?

24              THE INTERPRETER:  No, Your Honor.

25              THE COURT:  All right.  Are you currently under
```

1   the care of either a doctor or a psychiatrist?

2           THE DEFENDANT:  No, Your Honor.

3           THE COURT:  Are you currently taking any

4   prescription medications?

5           THE DEFENDANT:  Yes, Your Honor.  I have high

6   blood pressure --

7           THE INTERPRETER:  Yes, Your Honor.  Just high

8   blood pressure medication to control the pressure.

9           THE COURT:  Does that medication affect your

10  ability to think clearly?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Does it make you drowsy?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Is your mind in fact clear right

15  now?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  You understand what's

18  going on?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  And you've had a chance

21  to speak with your lawyers about your case?

22          THE DEFENDANT:  Yes.  Yes, Your Honor.

23          THE COURT:  And also about what we're doing

24  today?

25          THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  Are you satisfied with their
 2    representation of you so far?
 3              THE DEFENDANT:  Yes, Your Honor.
 4              THE COURT:  Mr. Targ, have you had discussions
 5    with Mr. Guillen that give you any concern about his
 6    competency?
 7              MR. TARG:  No, Your Honor.
 8              THE COURT:  Very good.
 9              Mr. Guillen, I want to start by addressing your
10    constitutional right to have the charges that the
11    government wishes to bring against you brought by way of
12    what's called an indictment.  Because the charge that the
13    government wants to bring against you is a felony charge,
14    you have a constitutional right to require the prosecutor
15    to appear before a grand jury and to seek from the grand
16    jury what's called an indictment, which means a charge, in
17    effect.  And because this is a felony charge, this case
18    cannot proceed unless one of two things happens.  Either
19    the prosecutor goes before the grand jury and obtains an
20    indictment, or you waive your constitutional right to have
21    the prosecutor do so.  Do you understand that that's the
22    only way, those two are the only ways this case can
23    proceed?
24              THE DEFENDANT:  Yes, Your Honor.
25              THE COURT:  All right.  And I want to explain
```

1    what the grand jury is, make sure you understand that

2    process.  A grand jury is a group of citizens, at least 16

3    and as many as 23 citizens, and their purpose is to gather

4    and to hear evidence presented by the prosecution only,

5    and from that evidence decide whether there's probable

6    cause to believe that a crime has been committed and also

7    probable cause to believe that you committed that crime.

8    And only if a majority of at least 12 of the grand jurors

9    vote yes to those questions can the grand jury lawfully

10   issue an indictment.  Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  All right.  And what you need to

13   understand is the government wishes to proceed not by

14   going to a grand jury but, rather, by filing in the court

15   this document which is called an Information, which also

16   has a charge against you which the grand jury has never

17   been asked to review, and they can only do that if you

18   waive your right to have them go to the grand jury.  Do

19   you understand?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Now, in considering whether you wish

22   to waive your right, you need to understand that if the

23   prosecutor were to go to the grand jury and to present

24   evidence to the grand jury, the grand jury might indict

25   you but then again, the grand jury might not indict you.

1    And if the grand jury voted not to indict you, then that

2    would be the end of your case.  But if you proceed to

3    waive your right to indictment, then the prosecutor does

4    not have to go to the grand jury and, instead, your case

5    will proceed on this document called an Information.  Do

6    you understand?

7                 THE DEFENDANT:  Yes, Your Honor.

8                 THE COURT:  All right.  Have you had a chance to

9    review the information?

10                THE DEFENDANT:  Yes, Your Honor.

11                THE COURT:  And have you had a chance to discuss

12   it with your lawyers?

13                THE DEFENDANT:  Yes, Your Honor, I did.

14                THE COURT:  And do you understand the general

15   nature of the charge in the information?

16                THE DEFENDANT:  Yes, Your Honor.

17                THE COURT:  All right.  Just to be sure, I'm

18   going to ask Mr. Schechter to spend a moment discussing in

19   general terms the nature of the charge in the information.

20   And it might also be useful at this time to set forth the

21   maximum and any minimum penalties that Mr. Guillen would

22   face should he plead guilty to that charge.

23                MR. SCHECHTER:  Thank you, Your Honor.  The one

24   count information against Mr. Guillen is contained in a

25   document that is ten pages long.  It charges one count and

one forfeiture allegation.  The one count that is charged

is a violation of Title 18, United States Code, Section

1512(k), which is a conspiracy statute to obstruct an

official proceeding.

In this particular charge, Mr. Guillen is being

charged in a conspiracy with other persons to obstruct the

Security and Exchange Commission, also known as the SEC,

in connection with the presentation to that agency of a

fraudulent letter.  The fraudulent letter charged in the

Information alleged that there were certain loans that

were outstanding from the United States hedge fund to

Venezuelan countries.

Mr. Guillen and others are charged with

participating in a conspiracy to obstruct the SEC from

learning the truth about the document.  There were no

loans and Mr. Guillen and others knew that.  So, the

charge alleges that they conspired to interfere and

obstruct with the SEC's official proceeding which was a

civil lawsuit filed against certain people in the United

States.

If Mr. Guillen were to be convicted of such a

charge, he faces a statutory maximum sentence of 20 years

in prison, a theoretical fine of 2.5 million-dollars.

That would be twice the amount of money that is alleged to

have been paid in furtherance of the creation of the

```
 1    fraudulent letter.  He would also face a supervised
 2    release term of up to three years if prison sentence was
 3    imposed.  He would have to pay a special assessment of
 4    $100.  Restitution would also be possible in that he would
 5    have to pay the people he obstructed, which would be the
 6    SEC, the receiver, business advisors and the District
 7    Court, as well as the forfeiture allegation contained in
 8    the information which alleges that Mr. Guillen should
 9    forfeit any proceeds that he received from the conspiracy.
10    And, in particular, there is an allegation that he
11    received 250,000-dollars in furtherance of that
12    conspiracy, and the government is giving him notice in the
13    information that we intend to forfeit that amount of
14    money.
15              THE COURT:  All right.  And just to clarify,
16    with respect to the supervised release term, any violation
17    of a condition of supervised release could subject
18    Mr. Guillen to an additional two years in prison, without
19    credit for time served or time spent on supervised
20    release, is that right?
21              MR. SCHECHTER:  That is correct, Your Honor.
22              THE COURT:  Very good.  All right.
23              Mr. Guillen, do you fully understand the nature
24    of the charge against you in the information that the
25    government wishes to file?
```

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  You understand the

3     potential penalties that you face with respect to that

4     charge?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  And do you understand

7     that is the charge that you have a constitutional right to

8     require the prosecutor to go and seek an indictment from a

9     grand jury before that charge can be brought?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  Has anybody made any

12     promises to induce you to waive indictment by a grand

13     jury?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Has anyone sought to coerce you or

16     threaten you in any way to waive indictment by the grand

17     jury?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Whose decision is it to waive

20     indictment?

21          THE INTERPRETER:  Mine.  Well, mine and my

22     wife's.

23          THE COURT:  Well, fair enough.  All right.  We

24     all answer to our wives.  But I want to make sure it's

25     your voluntary decision, is that right?

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  All right.  And, in fact, you do
 3    wish to waive indictment in this case, is that right?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  All right.  I understand that there
 6    may be a written waiver of indictment.  Has that been
 7    executed?
 8              MR. SCHECHTER:  Yes, Your Honor.  If I may
 9    approach?
10              For the record, this is a one page waiver of
11    indictment form.  It has been executed by Mr. Guillen as
12    well as by Attorney Targ.
13              (Hands Court.)
14              THE COURT:  Very good.  Thank you.
15              On the basis of the written waiver of indictment
16    as well as the statements made by Mr. Guillen under oath
17    and in open court today, it is the finding of the court
18    that the waiver of indictment is a knowing and voluntary
19    waiver and it is accepted.  The written waiver of
20    indictment will be filed by with the court and,
21    Mr. Schechter, if the government has not already done so,
22    this would be a good time to file the original information
23    as well.
24              MR. SCHECHTER:  If I may do that at this time,
25    Your Honor?
```

1        For the record, I'm handing up a ten page

2   document signed by the United States Attorney, by

3   Attorneys Murphy and by myself.

4        (Hands Court.)

5        THE COURT:  Thank you.

6        All right.  Mr. Guillen, we are now turning to

7   the question of whether you wish to plead guilty to the

8   charge in the Information or not.  And I want to begin by

9   describing various constitutional rights that you have,

10  that you would waive or lose in the event that you decided

11  to plead guilty, so please listen carefully and let me

12  know if you have any questions as we go through these.

13        I want to begin by making sure you understand

14  that you are not required to plead guilty to the charge in

15  the information, even if you actually committed that

16  crime.  So, even if you are actually guilty, you have the

17  right to plead not guilty.  Do you understand that?

18        THE DEFENDANT:  Yes, Your Honor, I understand.

19        THE COURT:  And if you plead not guilty, by

20  doing that, you will place on the government, on the

21  prosecutor, the burden of taking or case to trial and

22  proving to an unanimous jury of 12 persons that you have

23  been proven guilty beyond a reasonable doubt.  And the way

24  you put that burden on the government is simply by saying

25  not guilty when you are asked how it is you plead.

If you plead not guilty, you're entitled to a speedy public trial before a jury and with the assistance of a lawyer in defending against the charge in the information.  At trial you would be presumed innocent and the government would have to overcome that presumption using competent evidence and prove your guilt to a standard of beyond a reasonable doubt.  You would not have any burden to prove that you are innocent.

If the government were to fail to prove your guilt beyond a reasonable doubt, the jury would have a legal duty to find you not guilty.

During the course of a trial, witnesses for the government would be required to come here into court and to testify under oath and in your presence.  And you would have the right to confront them, which means that through your lawyers, you would have the right to question them to show either that they are not telling the truth or to bring out information that might be helpful to your defense.  You would have the right to object to evidence offered by the government and you would have the right to offer evidence in your defense, including the testimony of witnesses.

At trial you would have the right to testify if you wanted, to but you could not be required to testify. Just as you have the right to remain silent today, you

1    would have the right to remain silent throughout your

2    trial.  What's more, if you decided not to testify at

3    trial, I would instruct the jury they could not consider

4    your silence at trial as any evidence of your guilt.  In

5    other words, the jury would not be permitted to assume

6    that you were guilty or infer that you were guilty because

7    you exercised your right to remain silent at trial.

8              Now, whether or not you yourself testified, you

9    would have the right to call others as witnesses.  And you

10   would have the ability to compel the attendance and

11   testimony of reluctant witnesses by serving them with

12   what's called a subpoena.  So, if there's someone who

13   knows something about your case who might be helpful to

14   your defense but they don't want to come to court or

15   testify, you may be able to require them to do so by

16   serving them with a subpoena, which is simply a court

17   order, form of court order, requiring someone to come to

18   court and give testimony.

19             Do you understand all the rights that I just

20   described?

21             THE DEFENDANT:  Yes, Your Honor, I understand.

22             THE COURT:  And do you understand that these are

23   all rights that you would enjoy if you plead not guilty,

24   and that you would waive or lose if you were to plead

25   guilty today?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  And do you wish to waive

3     each of these rights by pleading guilty to the charge in

4     the information?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  If you plead guilty and

7     I accept your plea, you're going to be giving up your

8     constitutional right to a trial and all the other rights

9     that I just described.  If you plead guilty, there will be

10    no trial of any kind and there will be no jury that

11    decides any issue in your case.  So, the jury will not be

12    asked to decide whether you've been proven guilty and the

13    jury will not be asked to decide any issue of fact that

14    might affect the length of your sentence.

15          And I want to make sure you understand the

16    significance of that.  If you plead guilty today, at your

17    sentencing hearing, as the sentencing judge I will decide

18    any issues of fact that could effect the length of your

19    sentence.  For example, the fine amount will be affected

20    by the amount of money at issue and that's a -- if that's

21    disputed, that is an issue of fact I will decide.  It's

22    easier for the government to prove that or any other fact

23    to me than it is to prove that same fact to a jury for

24    three reasons.

25          First, there's only one of me and there's 12

1    jurors who have to be unanimous.  It's easier to convince

2    one person than 12 people.

3           Second, the rules of evidence don't apply to a

4    judge at a sentencing hearing, so I would be permitted to

5    hear or see evidence that the jury might not be permitted

6    to see under the rules of evidence.

7           And, most importantly, the burden of proof or

8    the standard of proof is much lower with a judge at a

9    sentencing hearing than with a jury.  You heard me say

10   earlier that a jury decides issues beyond a reasonable

11   doubt, and they would use that standard in deciding any

12   facts that they are called upon to decide.  At sentencing,

13   as the sentencing judge, I can decide an issue of fact by

14   what we call the preponderance of the evidence standard,

15   and it's a much lower standard.

16          Preponderance of the evidence is if the scales

17   tip just a little bit one way or the other, I could make a

18   finding, whereas a jury would not be permitted to do so

19   unless the proof was beyond a reasonable doubt.

20          Do you understand that if you plead guilty

21   today, any issue of fact that could effect your sentence

22   is an issue that I'll decide without regard to the rules

23   of evidence and by a preponderance of the evidence

24   standard?

25          THE INTERPRETER:  Yes, Your Honor.

1          THE COURT:  All right.  I also want to make sure

2     that you understand that if you plead guilty today, that's

3     going to end the question of your guilt or innocence.  So

4     you will not be permitted to appeal the fact of your

5     conviction, that is, the fact of your guilt.  You would

6     retain the right to appeal your sentence, which is the

7     punishment that you receive as a result of your guilty

8     plea.  Do you understand that distinction?

9          THE DEFENDANT:  Yes, Your Honor, I understand.

10          THE COURT:  All right.  And what's more, if you

11     receive a sentence that you're not happy with, you're not

12     going to be permitted for that reason to come back into

13     court and withdraw your guilty plea.  Do you understand?

14          THE DEFENDANT:  I understand, yes, Your Honor.

15          THE COURT:  All right.  Do you wish to waive

16     your right to trial and all the other rights that I

17     described and to plead guilty in this case?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  There are some other

20     significant consequences of pleading guilty and I want to

21     review those for you now.

22          First, the charge against you in the information

23     is a felony charge, and if you plead guilty to that

24     charge, you will be a convicted felon and that's going to

25     deprive you of certain valuable civil rights that you may

1    have today, including the right to vote, the right to

2    serve on a jury, the right to hold public office and the

3    right to possess any type of firearm or ammunition.  Do

4    you understand?

5            THE DEFENDANT:  Yes, Your Honor, I understand.

6            THE COURT:  Every person convicted of a felony

7    in federal court is required to provide a DNA sample that

8    will be analyzed and used by law enforcement for law

9    enforcement purposes.  Do you understand that?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  It is virtually certain that

12    following a guilty plea and following service of any

13    prison sentence imposed, that you would be deported from

14    this country, removed from this country and not permitted

15    to return without prior written permission of federal

16    authorities.  Do you understand that?

17            THE DEFENDANT:  Yes, Your Honor, I understand.

18            THE COURT:  And, finally, a guilty plea today

19    could work to your disadvantage if you are ever in court

20    again.  If you wish to take the stand as a witness in any

21    court matter, your credibility can be impeached by the

22    fact of a prior felony conviction.  And if you are ever

23    convicted of another crime, the sentence you receive is

24    likely to be more onerous as a result of a prior

25    conviction either because a statute requires the

1    imposition of a more severe sentence or because a judge

2    exercising discretion chooses to impose a more severe

3    sentence.  Do you understand that?

4            THE DEFENDANT:  Yes.  Yes, Your Honor.

5            THE COURT:  And do you understand and accept

6    each of these additional consequences of pleading guilty?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  I need to describe for you how

9    sentencing works in the federal court, and I want to make

10   sure that you understand at the outset that there is no

11   deal or agreement about what sentence you will receive in

12   exchange for your guilty plea today.  Do you understand?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  In some court systems, you can plead

15   guilty in exchange for a specific sentence and that is not

16   what's happening today.  No one knows today what your

17   sentence will be because we know it will be within a

18   statutory range, zero to 20 years' imprisonment, but we

19   don't know where within that range it will fall.  And that

20   determination is something that I have to make at

21   sentencing after considering all of the factors set forth

22   in a statute called 18 USC Section 3553(a), and those

23   factors include your background and characteristics, the

24   nature and circumstances of your crime, the purposes of

25   sentencing which include punishment, deterrence,

```
 1    rehabilitation and incapacitation, the sentencing
 2    guidelines and the advice they give me about how to
 3    sentence you, the need for restitution and so forth.
 4              In other words, I'm required by the law to
 5    consider all the information I have about you, good and
 6    bad, to weigh that information and try to craft a sentence
 7    that in your individual case will be fair, just and
 8    reasonable and sufficient but not greater than necessary
 9    to serve the various purposes of sentencing.  Do you
10    understand?
11              THE DEFENDANT:  Yes.  Yes, Your Honor.
12              THE COURT:  All right.  One of the things that I
13    am required to consider and, therefore, required to review
14    with you today what is we call the U. S. Sentencing
15    Guidelines.  Are you familiar in general with the U. S.
16    Sentencing Guidelines?
17              (Pause)
18              THE COURT:  Somewhat?
19              THE DEFENDANT:  Some --
20              THE INTERPRETER:  Some, yes, somewhat.
21              THE COURT:  Hopefully then you understand that
22    the sentencing guidelines require me to make two
23    calculations and as a result of those calculations, to
24    receive advice about how to sentence you.  The first
25    calculation is what we call your offense level and it
```

seeks to quantify the seriousness of your crime.  It can
be affected by various factual findings that I make
concerning how the crime was committed, what relationship
you might have had with various parties, the amount of
money at issue and so forth.  And based upon findings that
I make, I come up with literally a number that seeks to
quantify how serious your crime is.

I then look at your background.  Have you ever
been convicted of a crime in the past; if so, did you
serve time in prison; how long; when were you released.
As a result of those types of determinations, I come up
with what's called your criminal history score, and I look
at a chart in the guidelines.  I read down your offense
level, across your criminal history score and I see a
range of numbers, and that's the months of imprisonment
that the sentencing guidelines recommend that I sentence
you to.  Do you understand generally how those
calculations work?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And whatever that advice
from the guidelines is, it is only advice.  I'm required
to consider it, I am not required to follow it.  Instead,
I have to come up with a sentence, as I said before,
within the statutory range that in my view best suits your
individual circumstances.  Do you understand?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  Have you discussed with

3    your lawyers sentencing in general in the federal court as

4    well as the sentencing guidelines in particular?

5          THE DEFENDANT:  Yes.  Yes, Your Honor.

6          THE COURT:  And have they given you some advice

7    or prediction about how you're likely to be sentenced in

8    this case?

9          THE DEFENDANT:  We discuss it roughly, but --

10          THE COURT:  Yes, that's all right.  That's good.

11    You understand whatever they've told you, whatever

12    estimate or prediction they have is simply that.  It's not

13    an agreement or deal that you have either with the

14    government or with me.  Do you understand?

15          THE DEFENDANT:  Yes.  Yes, Your Honor, I

16    understand.

17          THE COURT:  All right, very good.  All right, I

18    understand that there's a written plea agreement?

19          MR. SCHECHTER:  There is, Your Honor.

20          THE COURT:  All right.  That's been fully

21    executed?

22          MR. SCHECHTER:  It has, Your Honor.

23          THE COURT:  Would you hand it up, please?

24          MR. SCHECHTER:  For the record, Your Honor, I'm

25    handing up a plea agreement that's dated May 4, 2011.  It

```
1    contains 12 pages -- just one moment, Your Honor?

2            (Pause)

3            MR. SCHECHTER:  The plea agreement contains the

4    signature of myself and Attorney Murphy on behalf of the

5    government and it also contains the signatures of

6    Mr. Guillen as well as Mr. Targ on behalf of the defense.

7    And it also contains a stipulation of offense conduct at

8    the 11th page and a rider regarding restitution at the

9    12th page.

10           THE COURT:  Very good, thank you.

11           (Hands Court)

12           THE COURT:  All right.  Mr. Guillen, I have just

13   been handed up the document that Mr. Schechter just

14   described.  As mentioned, it takes the form of a letter

15   dated today, and it has attached to it a document called

16   Stipulation of Offense Conduct and also a document called

17   Rider Concerning Restitution.  Did you have a chance to

18   read this entire document before you signed page 10 of the

19   letter and page 11 which is the stipulation of offense

20   conduct?

21           THE DEFENDANT:  Yes, Your Honor, I did.

22           THE COURT:  And did you have a chance to

23   discuss it with your lawyers?

24           THE DEFENDANT:  Yes, Your Honor, I did.

25           THE COURT:  And do you understand what this
```

1    document says?

2                    THE DEFENDANT:  Yes, Your Honor, I understand.

3                    THE COURT:  Just to be sure, I'm going ask

4    Mr. Schechter, the prosecutor, to summarize the important

5    provisions of the plea agreement.  Please listen

6    carefully.  If he says anything that surprises you or

7    that's different from what you think the document says, I

8    need you to tell me that.  All right?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Very good.

11                   MR. SCHECHTER:  Thank you, Your Honor.  The plea

12   agreement dated May 4, 2011, provides that if Mr. Guillen

13   enters a plea of guilty to the information that the

14   government has filed today, the government will accept

15   that plea of guilty and agree not to bring any further

16   criminal charges against Mr. Guillen arising out of the

17   conspiracy to obstruct the SEC.

18                   Mr. Guillen understands that if he pleads guilty

19   to this offense, page two of the agreement lists the

20   maximum penalties that Mr. Guillen can face, and that's

21   the 20 year reference I previously put on the record, as

22   well as the period of supervised release of up to three

23   years, the special assessment of $100, the potential fine

24   of $2.5 million, as well as the forfeiture that the

25   government has alleged it will seek in connection with

1    this case.

2            The plea agreement also provides notice to

3    Mr. Guillen of possible restitution, and there's a rider

4    at the end which Your Honor has already referenced.

5            Page three of the agreement goes through a

6    little bit of detail of the forfeiture and explains in

7    detail what 250,000-dollars the government intends to

8    forfeit.  Pursuant to the agreement, Mr. Guillen is

9    agreeing to the forfeiture of that 250,000-dollars.

10           The plea agreement also references what Your

11   Honor referred to before as the guidelines.  The parties

12   have reached certain stipulations regarding the offense

13   conduct and acceptance of responsibility.  Those

14   stipulations are binding on the parties, but Mr. Guillen

15   understands that they are not binding on the court and

16   that the court may make independent findings and may come

17   up with a different guideline analysis.

18           The guideline stipulations are set forth on

19   pages four, five and six.

20           This agreement also contains what is referred to

21   as a waiver of appeal.  Pursuant to this agreement,

22   Mr. Guillen understands that if he were to receive a

23   sentence of 33 months or less, a fine of $60,000 or less,

24   and a term of supervised release of three years, an order

25   of restitution and forfeiture as agreed to in the plea

1    agreement, that Mr. Guillen will be knowingly and

2    voluntarily giving up his right to appeal.  So, in other

3    words, he cannot appeal any sentence that is not in excess

4    of 33 months, and he's giving up that right pursuant to

5    this agreement.

6              The plea agreement also tells Mr. Guillen all of

7    the rights that Your Honor has already gone over that he

8    would be giving up as a result of pleading guilty.

9              And as Your Honor has already pointed out,

10   Mr. Guillen, because he's not a U. S. citizen, has certain

11   immigration consequences that would flow from a guilty

12   plea.  He understands that removal from this country is

13   presumptively mandatory as a result of the charge he's

14   pleading to, and pursuant to this agreement, Mr. Guillen

15   is agreeing that he will accept a final order of removal

16   if one is, in fact, imposed and he will not, he will not

17   appeal from that final order of removal.

18             The other provision of the plea agreement that

19   is significant, Your Honor, is the stipulation page which

20   occurs after page ten, so I guess it would be page 11 but

21   it's not numbered.  And these are all facts that

22   Mr. Guillen is agreeing with the United States are true

23   facts and that he is bound by these facts as a result of

24   his decision to enter his plea of guilty.

25             I can go over the elements of the specific crime

1    now or I can do that later.

2            THE COURT:  Yes, why don't you do that now.

3    That would be helpful.

4            MR. SCHECHTER:  Okay.  The plea agreement also

5    notifies Mr. Guillen of the three essential elements that

6    the government would be required to prove beyond a

7    reasonable doubt to convict Mr. Guillen of the conspiracy

8    charged in the information.

9            THE COURT:  Let me just interrupt there.  I want

10   to make sure that Mr. Guillen understands what we mean by

11   the term "elements."  The elements of an offense are the

12   essence of the offense, the fundamental foundation, if you

13   will, of the offense.  In other words, the elements are

14   those facts that the government would have to prove to a

15   jury beyond a reasonable doubt before that jury could find

16   you guilty, if you pled not guilty and went to trial.  Do

17   you understand, Mr. Guillen, what we mean by elements of

18   the offense?

19           THE DEFENDANT:  Yes, Your Honor, I understand.

20           THE COURT:  So, Mr. Schechter is now going to

21   describe the three elements which are set forth in writing

22   in the plea agreement.

23           MR. SCHECHTER:  There are three elements to a

24   conspiracy to obstruct an official proceeding.

25           The first element would be that two or more

1    persons entered into an agreement to obstruct an official

2    proceeding.

3          The second element would be that Mr. Guillen,

4    the defendant, knowingly participated in that conspiracy

5    with the specific intent to commit the offense that was

6    the object of the conspiracy; in this case, to obstruct an

7    official proceeding.

8          And, third, that during the course of the

9    conspiracy, one of the members of the conspiracy committed

10   an overt act in furtherance of the objective of that

11   conspiracy.

12         THE COURT:  Very good.  Thank you.

13         Mr. Targ, anything to add to the summary of the

14   plea agreement that was just set forth?

15         MR. TARG:  Just one matter, Your Honor.  The

16   250,000-dollars that's referred in there for forfeiture

17   purposes has already been provided to me by Mr. Guillen

18   and it is in my law firm trust account and we're just

19   awaiting final instructions from Mr. Schechter and Mr.

20   Murphy with respect to who we make that have payable to.

21   That should be accomplished by the end of the week is my

22   understanding.  I wanted to let the court know that.

23         THE COURT:  Very good.  Thank you.

24         MR. TARG:  Thank you.

25         THE COURT:  Mr. Guillen, was there anything Mr.

1   Schechter said when he was describing the plea agreement

2   that either surprised you or was different from what you

3   think the document says?

4          THE DEFENDANT:  No, Your Honor.  It is the same

5   document.

6          THE COURT:  And did you understand everything

7   that he said?

8          THE DEFENDANT:  Yes.  Yes, Your Honor.

9          THE COURT:  All right.  I want to go over a

10  couple things and just make sure that you understand them

11  fully.  At the bottom of page two there's a section called

12  Restitution, and Restitution essentially means that as a

13  result of your conviction here, there may be an order of

14  the court that requires you to pay money to one or more

15  victims of your offense.  And if a restitution order

16  enters, then that is like a civil judgment issued by a

17  court, so it's going to be a legal obligation of you to

18  pay that money to the victim.  Do you understand?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Okay.  All right, and that's a

21  possibility in this case.  Forfeiture, in light of what

22  Mr. Targ says, I believe you understand what we mean by

23  forfeiture.  Forfeiture means that property of yours in

24  effect is transferred and becomes property of the

25  government.  And that 250,000-dollars will become

 1    government property pursuant to your agreement here and

 2    you'll have no right to claim it back.  Do you understand?

 3              THE DEFENDANT:  Yes, Your Honor.

 4              THE COURT:  There's a section regarding the

 5    guideline stipulation, and the point I want to make sure

 6    you understand here is with respect to the calculation of

 7    the guidelines, you're agreeing that certain calculations

 8    ought to be made and you're reserving the right to dispute

 9    the government's interpretation of the guidelines with

10    respect to other issues.  But you are, in effect, by this

11    stipulation, you are limiting your right at sentencing to

12    argue about at least certain portions of the guideline

13    calculation to which you agreed or stipulated.  Do you

14    understand?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  All right.  So you're not going to

17    be able to come back and take a different position than

18    you've taken here at the time of your sentencing.

19              THE DEFENDANT:  Yes, Your Honor, I understand.

20              THE COURT:  Importantly, on page six there's a

21    section called waiver of right to appeal or collaterally

22    attack conviction and sentence.

23              Quite simply -- quite simply what this means is

24    if you receive a sentence of 33 months' imprisonment or

25    less, three years of supervised release or less, a fine of

1    $60,000 or less, in addition to restitution and

2    forfeiture, that your case is over in any court.  You

3    would not -- you are agreeing that you are waiving your

4    right to file an appeal of any kind or to collaterally

5    attack both your conviction and your sentence in any way,

6    which means by filing a petition, for example, a petition

7    for habeas corpus, arguing there's some constitutional

8    defect in the proceedings.  Do you understand?

9            THE DEFENDANT:  Yes, Your Honor, I understand.

10           THE COURT:  All right.  So as a practical

11   matter, if you receive that sentence or less, your case is

12   over completely.  Do you understand?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  All right, and that's something that

15   you're agreeing to in this letter?

16           THE DEFENDANT:  Yes, Your Honor, I accept.

17           THE COURT:  All right.  One waiver that I did

18   not touch base with you about is the waiver of statute of

19   limitations, and quite simply that means your case will

20   not be dismissed as a result of -- as a result of the

21   passage of time, so if there's some problem in the case

22   and it has to start again, it will be considered timely,

23   as timely then as it is today.  Do you understand?

24           THE DEFENDANT:  I understand, I understand.

25           THE COURT:  All right.  And as Mr. Schechter

1    pointed out, I want to again emphasize the page entitled

2    Stipulation of Offense Conduct, the word "stipulation"

3    means agreement.  And by signing this page, you're

4    agreeing that the statements on that page are factually

5    accurate.  Do you understand?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  And are the statements on that page

8    factually accurate?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  All right.  Mr. Guillen, is the

11   document that we've been discussing the entire agreement

12   that you've reached with the government concerning your

13   decision to plead guilty today?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  So, am I correct in understanding

16   that no one has made any promises or representations to

17   you that have not been put down in writing here?

18             THE DEFENDANT:  No, Your Honor.

19             THE COURT:  Okay, and -- no, no one's made

20   promises or representations?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  All right.  It's always a confusing

23   question, isn't it?

24             All right.  So this is the entire agreement.

25   Has anybody tried to force you, coerce you, threaten you

1    in any way to get you to sign this agreement or to plead

2    guilty today?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  All right.  Is it your decision to

5    plead guilty today?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  All right, and have you made that

8    decision because you in fact committed the crime charged

9    in Count One of the Information?

10             THE DEFENDANT:  Absolutely, yes, Your Honor.

11             THE COURT:  All right.  And it's my practice to

12   provide the original plea agreement, stipulation of

13   offense conduct and rider concerning restitution to the

14   U. S. Attorney for safekeeping and later filing at or

15   about the time of sentencing.  Is there any objection to

16   doing that in this case?

17             MR. TARG:  No, Your Honor.

18             THE COURT:  Very good.  Let the record reflect

19   I'm returning the original plea agreement, stipulation of

20   offense conduct and rider concerning restitution to

21   Mr. Schechter for safe keeping.

22             (Hands counsel)

23             THE COURT:  All right.  Mr. Guillen, when we

24   were discussing your plea agreement, one of the things

25   Mr. Schechter reviewed with you were the three elements of

1     this offense.  And it's my understanding that you

2     understand what those elements are, is that right?

3             THE DEFENDANT:  Yes, Your Honor.

4             THE COURT:  All right.  What I'm going to ask

5     Mr. Schechter to do at this point is to describe how it is

6     the government believes it could prove, it could prove

7     each of these elements if you were to plead not guilty and

8     go to trial.  In other words, he's going to describe what

9     it is the government believes you did that violated the

10    law.  I need you to listen carefully to that and tell me

11    when he's done whether you disagree with anything that he

12    says that you did.  All right?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  All right.  Mr. Schechter?

15            MR. SCHECHTER:  Thank you, Your Honor.  If this

16    case were to proceed to trial, the government would prove

17    the three essential elements of the conspiracy charge as

18    follows:

19            The government would prove Mr. Guillen was a

20    Venezuelan accountant who was the managing partner of an

21    accounting firm that was associated with a major

22    international accounting firm.  The government would prove

23    that in late 2010, Mr. Guillen agreed with Francisco

24    Illarramendi and others to prepare a false asset

25    verification letter that would indicate falsely that a

hedge fund managed by Mr. Illarramendi contained large
assets in the amounts of approximately 275 million-dollars
in the form of loans to Venezuelan companies.

The government would prove that that false asset
verification letter was a complete fiction, that were
there were no loans outstanding to Venezuelan companies
and that Mr. Guillen, Mr. Illarramendi and others knew it.

The government would prove there was an
agreement between Mr. Guillen, Mr. Illarramendi and
others, to prepare that letter so that Mr. Illarramendi
could use it to falsely represent the assets of his hedge
fund.

The government would prove that in January 2011,
Mr. Guillen signed that letter under -- bearing the name
of the international accounting firm, indicating that
there were 275 million of U. S. dollar assets outstanding
in credits to Venezuelan companies.

Mr. Illarramendi then provided that letter to
the SEC.  When Mr. Guillen found out that that letter had
been provided to the SEC, Mr. Guillen made false
statements to the SEC attesting that that letter was
accurate when Mr. Guillen knew it was not.

Therefore, when Mr. Guillen found out that the
SEC had filed a civil lawsuit against Mr. Illarramendi and
others, Mr. Guillen, Mr. Illarramendi and others agreed to

create fraudulent documentation to support the false asset

verification letter, even though Mr. Guillen,

Mr. Illarramendi and others knew there were no outstanding

loans.

They agreed to do this to obstruct and deceive

the SEC in its civil action from learning the truth, that

those assets did not exist.

If this case were to proceed to trial, the

government would prove that Mr. Guillen expected to

receive money for his participation in the conspiracy.

The government would prove that Mr. Illarramendi

caused 1.25 million-dollars to be transferred to a bank

account in Florida that was controlled by a coconspirator

of Mr. Guillen and Mr. Illarramendi, and the government

would also prove that Mr. Guillen received 250,000-dollars

from that 1.25 million-dollars, ostensibly through a

transfer of funds to enable Mr. Guillen to purchase real

estate.

In proving all of those facts, the government

would establish that the three elements of conspiracy had

been accomplished.

First, that Mr. Guillen and Mr. Illarramendi and

other persons had an agreement to obstruct that SEC

proceeding; that Mr. Guillen knowingly participated in

that conspiracy with the specific intent to commit the

1    offense of obstructing the SEC's official proceeding; and

2    that during the conspiracy, Mr. Guillen and other

3    conspirators took acts, overt acts, including

4    Mr. Guillen's alleged false statement to the SEC,

5    Mr. Guillen's preparation of a fraudulent asset

6    verification letter, as well as Mr. Guillen's receipt of

7    250,000-dollars.

8            The government's confident that if all of those

9    facts were established at a trial, a jury would find

10   Mr. Guillen guilty beyond a reasonable doubt.

11           THE COURT:  All right, thank you.

12           Mr. Guillen, was there anything that

13   Mr. Schechter said that you did that you think is

14   inaccurate?

15           THE DEFENDANT:  No, Your Honor, it is true.

16           THE COURT:  All right.  And so is it in fact

17   true that you and Mr. Illarramendi and others entered into

18   an agreement to obstruct the SEC proceeding that was

19   described?

20           THE INTERPRETER:  Well, at first --

21           THE COURT:  Sir, I don't want -- I'm not asking

22   for a long explanation.  I just want to make sure --

23           THE DEFENDANT:  Okay.  Yes.

24           THE COURT:  So, it is true there was that

25   agreement?

1          THE INTERPRETER:  Yes.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  All right, and is it true that you

4    knowingly and voluntarily participated in the conspiracy

5    to obstruct the SEC proceeding?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And did you and others take steps to

8    bring about that result, that is, the obstruction of that

9    proceeding?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  All right.  Any further inquiry

12   needed?

13         MR. SCHECHTER:  No, Your Honor.

14         THE COURT:  All right.  Mr. Guillen, it is now

15   time to take your plea to the charge in the information.

16   And we can read the information out loud to you or you can

17   waive that reading if you would prefer.

18         MR. TARG:  We waive, Your Honor.

19         THE COURT:  All right, thank you.  I will ask

20   the courtroom deputy please to put Mr. Guillen to plea.

21         THE CLERK:  Yes, Your Honor.

22         THE CLERK:  In the case of the United States v.

23   Juan Carlos Guillen Zerpa, Criminal Number 3:11CR-76 SRU,

24   as to Count One of the Information charging you with a

25   violation of Title 18, United States Code, Section

1    1512(k), what is your plea?

2                THE DEFENDANT:  Guilty.

3                THE CLERK:  Your Honor, the defendant pleads

4    guilty to Count One of the information.

5                THE COURT:  Thank you.  On the basis of the

6    written plea agreement, including the stipulation of

7    offense conduct attached to that agreement, as well as the

8    statements made by Mr. Guillen under oath in open court

9    today in response to my questions and in response to the

10   remarks of the Assistant United States Attorney, it's the

11   finding of the court in the case of United States v. Juan

12   Carlos Guillen Zerpa that Mr. Guillen is fully competent

13   and capable of entering an informed plea, that he's aware

14   of the nature of the charge and the consequences of the

15   plea, and that the plea of guilty is a knowing and

16   voluntary plea supported by an independent basis in fact

17   establishing each of the essential elements of the

18   offense.

19                Accordingly, Mr. Guillen's plea of guilty to

20   Count One of the Information is accepted and he is now

21   adjudged guilty of that offense.  A finding of guilty

22   shall enter and this case is referred to the U. S.

23   Probation Office for a presentence investigation.

24                Mr. Guillen, feel free to be seated.  I want to

25   describe for you the next step in your case, which is

1    going to be an interview both of you and most likely your

2    family and friends by the U. S. Probation Office, and I

3    want to make sure you understand several things.

4         First off, the probation officers work for the

5    court, which means for me, and not for the prosecutor.

6    And the purpose of those interviews is to allow the

7    probation officers to prepare for me what's called a

8    presentence report or sometimes called a PSR, and the PSR

9    is the single most important document that I'm going to

10   rely upon at the time of your sentencing.  It's going to

11   be telling me about your background, the circumstances of

12   this offense and any other information that might be

13   helpful in deciding how to sentence you.  So it's

14   generally in your interest if you and your family and

15   friends provide the information requested by the probation

16   officer.

17        I do need to advise you that whatever you tell

18   the probation officer could be used against you at your

19   sentencing.  Do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  All right.  And because the

22   interview by the probation officer is such an important

23   proceeding in your case, you have the right to have your

24   lawyer or lawyers present during that interview.  Do you

25   understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  And you can turn to them

3    with any questions or concerns at that time.

4          I'd like to set the following schedule in this

5    case.  Mr. Guillen should appear for sentencing at three

6    p. m. on July 22nd, 2011, here in Courtroom One in

7    Bridgeport.

8          The presentence report must be disclosed to the

9    defendant and counsel for the defendant and government by

10   June 15th.  Objections must be submitted by June 28th and

11   the revised presentence report must be disclosed to

12   counsel and the court by July 12th.  Sentencing motions or

13   memoranda should be filed by each side seven days in

14   advance of sentencing, with responses or objections due

15   four days in advance of sentencing.

16         Any questions or concerns regarding that

17   schedule?

18         MR. SCHECHTER:  Nothing from the government,

19   Your Honor.

20         MR. TARG:  Nothing, Your Honor.

21         THE COURT:  All right, very good.  And the next

22   thing to discuss is the conditions of Mr. Guillen's

23   release pending sentencing.  I understand the parties have

24   had discussions concerning that and may have reached some

25   agreement, is that right?

1            MR. TARG:  That is correct, Your Honor.

2            THE COURT:  All right.

3            MR. MURPHY:  Yes, Your Honor.

4            THE COURT:  I take it that Mr. Guillen is making

5    a motion for his release subject to those conditions and I

6    take it the government does not object.

7            MR. MURPHY:  Your Honor, we don't object.  I

8    would just put on the record sort of what the agreement

9    is --

10            THE COURT:  That would be helpful.

11            MR. MURPHY:  -- we have reached.  That is, the

12    defendant is agreeing to sign an appearance bond in the

13    amount of 1.35 million-dollars.

14            THE COURT:  I'm sorry, 1.35?

15            MR. MURPHY:  1.35 million-dollars which will

16    also be signed by three sureties.  His wife, Rosa Aguilera

17    Cedeno, who is here in the courtroom today; Ms. Maria

18    Aurora Lopez who is also here in the courtroom today; and

19    a person named Rodolfo Reyes who is Mrs. Lopez' husband.

20    They all will be signing the appearance bond.

21            In addition to that, that bond will be secured

22    by two properties located in Miami; one owned by a

23    corporation, two shareholders -- an LLC, two shareholders

24    which are Ms. Lopez and Mr. Reyes, the other is owned by

25    the defendant.  Those two properties are appraised,  a

1    value of, in equity of approximately 800,000-dollars.

2              In addition, the defendant will be posting with

3    the clerk of the court, and we would ask that the money be

4    put into an interest bearing account, two checks totaling

5    550,000-dollars in cash.

6              All of that, the real estate and the cash they

7    would agree to forfeit upon defendant's violation of his

8    conditions of release, including failure to appear at

9    sentencing.

10             In addition to security for the bond, the

11   parties agree on a condition that the defendant report to

12   probation in the Southern District of Florida within 24

13   hours of his release; that he get electronic monitoring

14   imposed; that he reside -- home confinement be imposed for

15   him to reside in his, in his property which is XXX XXXXXXX

16   XXXXXX in name, and that he -- the home confinement

17   essentially would be that he stays at home except for

18   visits to his attorneys, he can go to church, medical

19   appointments, travel to court, and other appointments as

20   approved in advance by probation.

21             And we would ask that -- counsel has agreed to

22   hold his passport, it's a Venezuelan passport.  He has

23   agreed that he, the defendant is agreeing that he will not

24   apply for a new passport and we think that, based on those

25   conditions, Your Honor, as well as the standard conditions

```
1    of release and any others that Your Honor would approve to

2    impose, that that would be sufficient.

3            I would ask that, Your Honor -- Your Honor,

4    actually the defendant is a Venezuelan citizen and I would

5    ask Your Honor remind the defendant if he were not to show

6    up at sentencing that he faces an additional ten years in

7    prison under Section 3146 and any sentence for his failure

8    to appear would have to be consecutive to any sentence

9    imposed in connection with the crime he's pled guilty to.

10           THE COURT:  Very good.  Thank you.

11           MR. TARG:  Your Honor, with respect to the issue

12   of a passport -- by the way, I do thank Mr. Schechter and

13   Mr. Murphy for collaborating with us on this.  We all put

14   a great deal of work into coming up with the bond package.

15           With respect to the passport, because the

16   defendant resides outside the District of Connecticut, the

17   only way he can get here is by flying, and so for purposes

18   of getting TSA we need identification.  Since he would

19   only come here with me to court hearings or meetings at

20   the U. S. Attorneys office, I had proposed and the U. S.

21   Attorneys office accepted the representation that I would

22   have his passport with me for that limited purpose.

23   Otherwise it will be locked up in my office and never in

24   the defendant's presence.

25           MR. MURPHY:  That is right, Your Honor.  That's
```

part of the agreement.  And one of the things I left out,
the parties have agreed that the defendant would -- his
travel would be restricted to Dade County, Florida, and
Connecticut to come to court and obviously, if necessary,
transit points between those two when he's coming to and
going from court.

THE COURT:  All right.

MR. TARG:  We will -- I think Mr. Murphy said we
would contact probation tomorrow morning.  It's really
Pretrial Services we would -- it's a separate office in
the Southern District so we will contact the Pretrial
Services office tomorrow and make the necessary
arrangements for the installation of the electronic
monitoring and his registration with Pretrial Services to
fulfill those conditions.  And my understanding is Mr.
Myers has spoken to them or will speak with them?

MR. MYERS:  I'm going to be make some
preliminary arrangements this afternoon, Your Honor, so
they can anticipate Mr. Guillen's arrival.

I also understood, perhaps I was mistaken, that
Ms. Cedeno would be acting as a third party custodian of
the defendant and assist the probation office in any areas
of noncompliance.

MR. TARG:  She is his spouse, Your Honor.  They
will of course be living together, and I did this back in

Miami, explained to her that obligation after we did a

telephonic interview with Mr. Myers.  Mr. Filan joined me

in reiterating that this morning before court.

Ms. Cedeno is here.  That's her on the left in

the green jacket.  And should the court have any questions

of her, she's certainly available to answer any questions.

And that's Ms. Lopez sitting next to her, who has agreed

to act as surety along with her husband.

THE COURT:  All right.  And I understand from

Mr. Myers all the sureties have been advised of the

potential risk to them of becoming sureties should

Mr. Guillen not appear for sentencing.

MR. TARG:  That is correct, on multiple

occasions.  We did it ourselves as defense counsel,

Mr. Myers verified it, and we did it again this morning

after assuring the government that we would do it.

THE COURT:  All right.  And Mr. Rodolfo Reyes,

how is he going to be executing the bond?

MR. FILAN:  Well, this is what we did, Your

Honor.  We took all of the documents that Mr. Reyes had to

execute and we sent them to him in Venezuela.  He was not

able to be here today.  And we had him fill out and take

all of the documents which we have already shown to the

United States Attorney's office this morning, and have

them notarize the signature witness at the U. S. Consulate

1   in Caracas.  So we have that information -- yes, we have

2   the consulate certification on the back page.  We have the

3   agreement to forfeit real property and affidavit which

4   explains that he spoke with counsel and with Mr. Myers and

5   understands everything that Your Honor just said about

6   what would happen.

7        We have all the documents that go with the

8   agreement to forfeit real property, the agreement to

9   forfeit the cash.  Because it's an LLC, all escrow

10  agreements, mortgage deeds and warranty deeds have been

11  signed individually and on behalf of the LLC.

12       And we also have a statement concerning

13  bankruptcy proceedings which basically says he will not do

14  anything that would inhibit the United States Government's

15  right to take that property should Mr. Guillen violate the

16  terms of his release.

17       So, we have all of those documents.  The one

18  document that he needs to sign is the appearance bond and

19  we are going to make arrangements to have him come to

20  Miami and execute that at the courthouse in Miami.

21       MR. MURPHY:  Yes, Your Honor, that's fine.

22       Couple other housekeeping matters.  I think I've

23  been advised that he needs to -- defense counsel has had

24  Mr. Reyes sign an agreement to forfeit the property, I

25  think, at the MC in Caracas.

```
 1              MR. FILAN:  Yes.

 2              MR. MURPHY:  Our office has asked also when he

 3     comes to the clerk's office, if he can do that in the

 4     Southern District in Florida to sign the appearance bond,

 5     that he also at that time sign another agreement to

 6     forfeit property so that it is done in front of the Clerk

 7     of the Court and that can be substituted in for the

 8     current one that we have.

 9              Separately I'd ask that Your Honor enter an

10     actual entry, the clerk's office needs an order for Your

11     Honor -- from Your Honor to place the cash,

12     550,000-dollars, in an interest bearing account.

13              THE COURT:  Yes, I'm going to order at this time

14     that the 550,000-dollars in cash and/or cashiers checks be

15     maintained by the clerk's office in an interest bearing

16     account pending further order of the court and released to

17     the appropriate party.

18              MR. TARG:  I have them here.  I will hand them

19     to the Clerk now?

20              THE COURT:  Yes.

21              MR. TARG:  May I approach?

22              THE COURT:  Please.

23         (Hands Clerk.)

24              MR. MURPHY:  Also as part of the bond package,

25     counsel will be filing mortgage deeds on the land records
```

1   in Florida tomorrow and returning them overnight to the

2   U. S. Attorney's office.  The escrow agreements will have

3   to be -- the date of the filing of the mortgages will have

4   to be added to the escrow agreements which will be done in

5   our office and we will sign those agreements once we get

6   the mortgages, the filed mortgages back.

7          MR. TARG:  That is correct.  We will file them

8   first thing in the morning and obtain certified, recorded

9   copies of those mortgages and I will Fed-Ex them,

10  overnight them to Mr. Murphy and Mr. Schechter.

11         THE COURT:  Very good.

12         MR. FILAN:  And we have a number of documents

13  just that we have to execute with the Clerk in closing

14  before Your Honor just to get that process done.

15         THE COURT:  Yes.

16         MR. FILAN:  And if we could ask Your Honor, the

17  marshals -- because the defendant does have to execute

18  some of those documents, including the escrow agreements

19  and things like that, that he be allowed to stay in the

20  courtroom until that process is completed?

21         THE COURT:  Yes.  I mean that's my assumption

22  about what will happen.  I'm going to filling out the

23  conditions of release.  I'm going to give it back to

24  counsel to review with Mr. Guillen and have him sign.

25  There will be a bond he's going to have to sign and the

```
 1    cosigners will have to sign.  That will all take place

 2    here unless there's some need to move him downstairs.

 3           Very good.  Let me just clarify the issue that

 4    Mr. Myers raised which was whether or not Mr. Guillen's

 5    wife is actually been going to formally serve as his

 6    custodian for the purposes of this order.  Is that part of

 7    your agreement?

 8           MR. FILAN:  Yes, Your Honor, yes.

 9           THE COURT:  All right.  And so --

10           MR. FILAN:  We've explained to her her

11    responsibilities as the third party custodian.

12           THE COURT:  All right.  What I'd like to do

13    then, I think it would just be faster if you or she fills

14    in her correct name, address, telephone number, and has

15    her sign that rather than me trying to --

16           MR. FILAN:  Absolutely.  If I may approach?

17           THE COURT:  So I'll check that box and ask you

18    to fill that in.  Thanks.

19           (Pause)

20           THE COURT:  The clerk is correctly pointing out

21    to me all we need is name and signature.  We don't need

22    address or telephone number.

23           (Pause)

24           THE COURT:  All right.  Let me just let you know

25    where we are.  I have here a three page order setting
```

conditions of release.  There are standard conditions on

the front which includes not violating federal, state or

local laws, so forth.  There's a requirement that

Mr. Guillen promises to appear in court as required and

surrender to serve any sentence imposed.  And then we have

specifically the additional conditions of release which

include at the top of this page that Mr. Guillen's wife

will be his custodian.  She needs to sign that.

Then we have specific conditions where I have

tried to summarize precisely what I've been told.  What

I'd like counsel to do is review with each other and with

Mr. Guillen, defense counsel review with Mr. Guillen the

items that have been checked and the descriptions that are

there, make sure that I fully set forth the parties'

agreements, and then I'd like Mr. Guillen to initial to

the left of each of my check marks to indicate that he has

read and understands the various restrictions on his

activities while he's on release pending sentencing.

As Mr. Murphy noted, Mr. Guillen, there are

very, very significant consequences of violating any term

or condition of your release.  And certainly very

significant consequences of fleeing and not appearing for

sentencing as required.  Those are set forth in part on

the last page of this order.  I need you to read those

penalties and sanctions, discuss them with your lawyer and

```
1    then sign to indicate that you understand both the
2    conditions and the penalties for any violation which, as
3    Mr. Murphy noted, will be a consecutive term of
4    imprisonment of up to ten additional years, among other
5    things.
6              So I'm going to ask counsel to --
7              MR. FILAN:  May I approach, Your Honor?
8              THE COURT:  -- do as I suggested and let me know
9    if you have any issues.
10             MR. FILAN:  Thank you, Your Honor.
11             (Hands Counsel)
12             THE COURT:  Let me just note for the record that
13   the agreement between the parties concerning Mr. Guillen's
14   presentence release is extremely extensive and it is not
15   possible to capture all of the details and nuances in a
16   short and written order such as this, and so the parties'
17   statements and agreements on the record in this proceeding
18   will constitute in effect additional understandings or
19   portions of this order and must be complied with.
20             MR. FILAN:  Understood.
21             THE COURT:  So, if I haven't gotten every little
22   tiny detail on the record, understand what was said on the
23   record here is going to be binding on Mr. Guillen.
24             MR. FILAN:  Very good.
25             MR. TARG:  Thank you, Your Honor.
```

1          (Pause)

2               MR. FILAN:  Your Honor, may I approach?

3               THE COURT:  Pursuant to the terms of the

4     parties' agreement and the order as set forth, the

5     conditions in the order set forth in writing here as well

6     as put forth on the record, I'm going to order Mr.

7     Guillen released pending sentencing pursuant to the stated

8     conditions.

9               The remaining documents regarding the parties'

10    agreement can be executed after we recess.

11              Mr. Guillen, I do want to emphasize one other

12    point and that is electronic monitoring of your home

13    confinement will often be inconvenient for you and there

14    are frequently times when someone subject to home

15    confinement thinks that if they just go down the street

16    quickly, there won't be a problem.  Please don't take

17    liberties like that.  Your monitoring will be done by the

18    Southern District of Florida as a courtesy to our district

19    and frankly as a result, even minor problems will be

20    treated by me as a major problem because it's an

21    inconvenience for someone who is doing this court a

22    courtesy.  So, I urge you to be especially vigilant not to

23    leave your home except as permitted.  Do you understand?

24              THE DEFENDANT:  Yes.

25              THE COURT:  All right.

1            THE DEFENDANT:  Yes, Your Honor.

2            THE COURT:  Anything else we should do at this

3    time?

4            MR. SCHECHTER:  No, Your Honor.

5            MR. FILAN:  Just one thing, Your Honor.  My

6    understanding is that marshals have run a check on

7    Mr. Guillen.  He's clear to be released on no other

8    detainers other than warrants so we would request he be

9    allowed to leave the courtroom after executing the

10   documents today.

11           THE COURT:  That's fine.  I'm seeing

12   acknowledgement from the marshals, that's fine.  That is

13   the order, unless probation has an issue with that.

14           MR. MYERS:  No, not with that, Your Honor.  I do

15   want to address one small issue if Your Honor would

16   consider it, and I apologize for not bringing this up

17   earlier, ordering the defendant to pay for the costs of

18   the electronic monitoring.

19           THE COURT:  Yes, that is set forth --

20           MR. TARG:  We understood.  In the Southern

21   District, it's always done that way, absolutely.

22           MR. MYERS:  Thank you.

23           THE COURT:  That's been done.

24           The last thing I wanted to mention, I believe

25   that Mr. Guillen's home address may have been stated on

```
1    the record.  Usually because transcripts such as this can

2    end up on our electronic system which is basically on the

3    internet, we tend to try to avoid putting social security

4    numbers, birth dates and home addresses in there.  Is

5    there any objection if I simply order the court reporter

6    to much strike from the record Mr. Guillen's home address?

7              MR. TARG:  No, Your Honor.

8              MR. MURPHY:  No.

9              THE COURT:  Very well.  That will be done.

10   Thank you all.  We'll stand in recess.

11             (Whereupon the above matter was adjourned at 1:50

12   o'clock, p. m.)
```

C E R T I F I C A T E


        I, Susan E. Catucci, RMR, Official Court

Reporter for the United States District Court for the

District of Connecticut, do hereby certify that the

foregoing pages are a true and accurate transcription of

my shorthand notes taken in the aforementioned matter to

the best of my skill and ability.



                /S/ Susan E. Catucci
        _____

            Susan E. Catucci, RMR
            Official Court Reporter
            915 Lafayette Boulevard
         Bridgeport, Connecticut  06604
              Tel: (917) 703-0761